IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANNA V. KORIDZE, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>FANNIE MAE CORP., et al., )<br>Defendants. ) | No. 1:08cv682 |

FILED
JAN - 6 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

At issue in this Title VII[1] employment discrimination case is whether an arbitration clause in plaintiff's consulting agreement with defendant Predigo, LLC ("Predigo") applies to plaintiff's gender discrimination, sexual harassment, and retaliation claims, and if so, whether arbitration must be compelled notwithstanding plaintiff's claim that the cost of arbitration prevents effective vindication of her Title VII rights.

For the reasons that follow, plaintiff's claims fall within the arbitration clause, and plaintiff has failed to show that the cost of arbitration effectively prevents vindication of her claims. Accordingly, arbitration of plaintiff's claims against Predigo must be compelled.

I

Plaintiff is a Maryland resident who attended the University of Virginia McIntire School of Commerce from 1993 to 1998. Over the past ten years, she has worked as a business analyst, generally for one or two year periods, for at least six companies or organizations, including Capital One, Indus Technology, the Drug Enforcement Administration, Fannie Mae, Phase One Consulting,

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*

and General Dynamics.

Plaintiff alleges that in late 2005, defendant Predigo, a Virginia limited liability company organized in 2004,[2] was tasked by defendant Omnitech Systems, Inc. ("Omnitech"), a Virginia corporation, to secure a qualified workforce for defendant Fannie Mae, a federally-chartered, government-sponsored enterprise with an office in Herndon, Virginia. Plaintiff alleges that it was pursuant to this arrangement that she signed a six-month consulting agreement ("CA") with Predigo on December 12, 2005, in which she agreed to provide business consulting services as an independent contractor for Fannie Mae. Neither Omnitech, nor Fannie Mae, were parties to the CA. Importantly, the CA includes an arbitration clause that provides, in pertinent part,[3] as follows:

> [A]ny dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement shall be settled by binding arbitration to be held in [the] City of Arlington, Virginia[,] in accordance with the Commercial Arbitration Rules, supplemented by the Supplemental Procedures for Large Complex Disputes, of the American Arbitration Association as then in effect . . . .

CA ¶ 6.14(a). Under the CA the parties also agreed to split equally all costs and expenses of such arbitration, but to pay separately for all counsel fees and expenses unless otherwise required by law. *Id.* at ¶ 6.14(c). The CA also contains a fee-shifting provision that provides for costs and expenses, including reasonable attorney fees, to be paid to the prevailing party in "any action or proceeding to enforce th[e] [a]greement or any provision hereof, or for damages by reason of alleged breach of th[e] [a]greement or of any provision hereof, or for a declaration of rights hereunder . . . ." *Id.* at ¶

---

[2] Although Predigo's certificate of registration was voluntarily cancelled October 15, 2008, it was a registered limited liability company at all times relevant to plaintiff's claims.

[3] Although the CA does except certain types of interim equitable relief from its arbitration clause, plaintiff does not seek any such relief here, and it is thus unnecessary to address any exceptions to the arbitration clause.

6.07.

Plaintiff alleges that shortly after she began to work at Fannie Mae's Virginia office, another person working for Fannie Mae pursuant to a consulting agreement with Predigo engaged in a pattern of inappropriate, offensive, and sexually-charged behavior directed towards her that persisted from December 2005 until June 2006. Plaintiff further alleges that defendants failed to respond properly to her complaints regarding the other employee's behavior. Plaintiff also alleges that defendants, in response to plaintiff having voiced her concerns about the harassment, took adverse employment action against her in June 2006 by reducing her hours, excluding her from meetings, and refusing to provide her with a letter of recommendation.

Plaintiff filed this lawsuit on July 2, 2008, alleging that defendants, acting as her "joint employers,"[4] are liable for sexual harassment, gender discrimination, and retaliation, all in violation of Title VII. Defendant Predigo moved to dismiss plaintiff's complaint and to compel arbitration, arguing that plaintiff's claims fall within the CA's arbitration clause. Plaintiff responded that the arbitration clause does not apply to her Title VII claims, and, in the alternative, that arbitration should not be compelled in this case because the cost of arbitrating her claims, rather than litigating them, precludes effective vindication of her Title VII rights. Additionally, plaintiff argues that even if arbitration is compelled, her claims against Predigo should be stayed, not dismissed, pending arbitration.

---

[4] *See, e.g., King v. Dalton*, 895 F. Supp. 831, 837 (E.D. Va. 1995) (observing that a Title VII "plaintiff may, in certain circumstances, have more than one 'employer' for purposes of Title VII liability" (citing *Magnuson v. Peach Technical Servs., Inc.*, 808 F. Supp. 500, 507–08 (E.D. Va. 1992) ("An individual may be the employee of more than one 'employer' for purposes of Title VII.")); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir. 1994) (interpreting term "employer" under Title VII to include "joint employers"))).

Following oral argument on Predigo's motion, plaintiff and Predigo were ordered to submit supplemental briefing addressing plaintiff's burden of "adduc[ing] sufficient evidence . . . demonstrating that the likely costs of arbitration, in light of plaintiff's overall financial situation and compared to the likely costs of the instant litigation, will prevent effective vindication of her statutory rights." *Koridze v. Fannie Mae*, No. 1:08cv682 (E.D. Va. Dec. 12, 2008) (Order). Plaintiff and Predigo complied, submitting the required supplemental briefing. Accordingly, the matter is now ripe for disposition.

## II

The starting point for analysis of plaintiff's motion is the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, which reflects a " 'liberal federal policy favoring arbitration agreements.' " *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), *quoted in Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002)). Specifically, Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), *quoted in Green Tree*, 531 U.S. at 89. Accordingly, the Fourth Circuit has observed that "[w]hen parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms." *Murray*, 289 F.3d at 302 (citing 9 U.S.C. §§ 3, 4). Further, it is well-settled that the FAA's requirements "apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act." *Id.* (citing *Circuit City Stores, Inc. v. Adams*,

532 U.S. 105, 109 (2001); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)). This is so because " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)), *quoted in Hooters*, 173 F.3d at 937, *and Murray*, 289 F.3d at 301.

In determining whether the FAA requires a court to compel arbitration and stay ongoing judicial proceedings, a court must conduct a three-step inquiry. *See Green Tree*, 531 U.S. at 90. First, it is necessary to "ask whether the parties agreed to submit their claims to arbitration . . . ." *Id.* If so, it is then necessary to determine "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (citing *Gilmer*, 500 U.S. at 26; *Mitsubishi*, 473 U.S. at 628). Assuming Congress has not evinced such an intention, a court must compel arbitration and stay judicial proceedings, provided that it determines that " 'the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.' " *Id.* (quoting *Gilmer*, 500 U.S. at 28). Here, in light of the well-settled fact that Congress has not evinced an intention to preclude a waiver of judicial remedies for Title VII employment disputes, it is only necessary to address the first and third steps of the inquiry. *See Murray*, 289 F.3d at 302.

First, it is clear that the parties agreed to submit the claims at issue to arbitration. Specifically, the CA provides for arbitration of "any dispute or controversy arising out of, *relating to or in connection with* the interpretation, validity, construction, *performance*, breach or termination" of the CA. CA ¶ 6.14(a) (emphasis added). Here, plaintiff's Title VII claims of gender discrimination and sexual harassment directly "relate to" and are "in connection with" plaintiff's "performance" of the CA; specifically, plaintiff claims that Predigo, as her joint employer with the other defendants to this

-5-

suit, engaged in illegal discriminatory acts in violation of Title VII during the time that plaintiff performed her obligations pursuant to the CA. Moreover, although plaintiff's retaliation claim alleges that Predigo took adverse employment actions against her after the CA expired, she nonetheless alleges that she engaged in the antecedent protected activity while she was still performing her obligations pursuant to the CA. Accordingly, the parties agreed to arbitrate plaintiff's Title VII claims, as they clearly relate to and are in connection with plaintiff's performance of the CA. *See, e.g., United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380–81 (4th Cir. 2008) (clause providing for arbitration of claims "related to . . . employment" compelled arbitration of plaintiff's False Claims Act claims).[5]

Given that the parties agreed to arbitrate plaintiff's Title VII claims, the sole remaining question is whether plaintiff may effectively vindicate her Title VII statutory rights in the arbitral forum. And with respect to this question, the Supreme Court has observed that where, as here, "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. Importantly, the Supreme Court held in *Green Tree* that the

---

[5] *Compare McCrea v. Copeland, Hyman, & Shackman, P.A.*, 945 F. Supp. 879, 881–82 (D. Md. 1996) (holding plaintiff agreed to arbitrate Title VII claims by agreeing to arbitrate "any controversy or dispute *relating to* th[e] [employment] [a]greement" (emphasis added)) *with Rudolph v. Alamo Rent-A-Car, Inc.*, 952 F. Supp. 311, (E.D. Va. 1997) (holding plaintiff did not agree to arbitrate Title VII claims by agreeing to arbitrate all "claim[s] that [defendant] has *violated*" the parties' agreement (emphasis added)). It appears that *McCrea* and *Rudolph* reached different results because the arbitration clause in *McCrea* contained the broader language of "relating to," whereas the clause in *Rudolph* contained narrower language that only compelled arbitration of claims that the defendant there had actually *violated* the terms of the agreement itself. Accordingly, because the arbitration clause at issue here uses the broader language of "relating to or in connection with . . . performance," it follows that the clause applies to plaintiff's Title VII claims.

record in that case did "not show that [the plaintiff] will bear such [prohibitive] costs if she goes to arbitration. Indeed, [the record] contains hardly any information on the matter"; accordingly, the "'risk' that [plaintiff] will be saddled with prohibitive costs [was] too speculative to justify the invalidation of an arbitration agreement." *Id.* at 90–91. The Supreme Court went on in *Green Tree* to observe that "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss." *Id.* at 92. Fortunately, however, the Fourth Circuit has elucidated this point in *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001). Specifically, the Fourth Circuit described the inquiry as follows:

> We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.

*Id.* at 556 (citing *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 764 (5th Cir. 1999); *Gilmer*, 500 U.S. 20). Importantly, the Fourth Circuit cautioned that "[t]he cost of arbitration, as far as its deterrent effect, cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are 'too high.'" *Id.* at 556 n. 5. Instead, the case-specific inquiry "must focus upon a claimant's expected or actual arbitration costs and [her] ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and [her] ability to pay those costs." *Id.* And in *Bradford*, the Fourth Circuit explicitly rejected the argument that where, as here, a plaintiff agrees to split arbitration costs equally, such a fee-splitting provision is a *per se* prohibitve burden, observing instead that the case-specific inquiry must focus on "the individualized deterrent

effect" of arbitration to a particular plaintiff. *Id.* at 557. Thus, it is necessary to weigh plaintiff's proof here with respect to (i) plaintiff's expected cost of arbitrating her claims against Predigo, (ii) plaintiff's ability to pay those costs, and (iii) plaintiff's relative expected cost of litigating her claims against Predigo. As explained below, plaintiff has failed to meet her burden with respect to each of the three categories of proof at issue.

First, plaintiff asserts her expected cost of arbitration is between $2,700 and $9,000. Plaintiff derives this figure based upon an assumption that the parties would use the administrative services of the American Arbitration Association ("AAA"), an expectation plaintiff reaches based on the parties' agreement to use the AAA's Commercial Arbitration Rules. The breakdown of plaintiff's estimate includes approximately $2,750 for an initial filing fee, $1,250 for a case service fee assuming arbitration proceeds to a hearing,[6] and $1,400 to $14,000 for estimated arbitrator fees; taken together, this range of $5,400 to $18,000, given the parties' agreement to split arbitration costs and fees,[7] provides plaintiff's given range of $2,700 to $9,000. Predigo contests plaintiff's assumption that AAA fees and costs are the relevant standard. Specifically, Predigo points out—correctly—that the parties' arbitration clause merely requires that arbitration be pursuant to the AAA *rules*, and not that the arbitration be conducted by the AAA. *See* CA ¶ 6.14(a).[8] Predigo argues

---

[6] Plaintiff derives the figures for initial filing and case service fees based on a presumed claim value of $150,000 to $300,000.

[7] Although plaintiff does contend that her costs may reach $18,000, plaintiff derives this figure based on the unfounded contention that Predigo may fail to abide by the parties' agreement to split arbitration fees and costs. There is no evidence suggesting that Predigo will not pay its share, and this ruling does not address whether the result would be different in the event that Predigo so refused to pay its half.

[8] This is further confirmed by plaintiff's own evidence—namely, an expert affidavit from a 2001 case, filed by plaintiff here, in which the Vice President of Case Administration for the

that as a result, plaintiff could potentially reduce the cost of arbitration by pursuing a different arbitral forum. Yet, the record here does not disclose the relative cost savings that plaintiff could achieve by selecting another arbitration service, nor does it disclose that plaintiff's use of AAA figures as an estimate is an unreasonable starting point for the analysis. Of course, Predigo also argues that plaintiff could potentially reduce her arbitration costs through waiver or deferral of administrative fees. In this respect, it is true that the AAA rules provide that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce . . . administrative fees." Pl.'s Second Supplemental Mem. in Opp'n, Ex. 4, at 21. Plaintiff responds by citing *Camacho v. Holiday Homes, Inc.*, 167 F. Supp. 2d 892 (W.D. Va. 2001), for her argument that "waiver of fees is extremely rare in practice." *Id.* at 897. But in *Camacho*, the parties *stipulated* that waiver was rare in practice. *Id.* Plaintiff does not provide any independent proof that the parties' stipulation in *Camacho* was, or still is, accurate, nor does plaintiff demonstrate whether her individualized circumstances would fall within any such normal practice. Thus, although it is a close question, plaintiff has not met her burden of showing that she is *likely* to incur *any* cost—let alone a prohibitive one—if she proceeds to arbitration. *See. e.g., March v. Tysinger Motor Co.*, No. 3:08cv508, 2007 WL 4358339, at *5 (E.D. Va. Dec. 12, 2007) (unpublished) (finding that "speculation about the way that [the arbitral forum] might handle the [plaintiffs'] complaint" in light of an arbitral rule providing for fee-shifting did not satisfy plaintiffs' burden of showing "*likely*" prohibitive cost (emphasis in original)); *see also Green Tree*, 531 U.S. at 92 (noting that party seeking to avoid arbitration must show "the *likelihood* of incurring such [prohibitive] costs"

---

AAA acknowledged that parties may, "by mutual agreement[,] . . . use the AAA rules, which are in the public domain, without AAA administration." Pl.'s Second Supplemental Mem. in Opp'n, Ex. 3, at 3.

(emphasis added)).

Yet, even assuming that plaintiff's $2,700–$9,000 range is an adequate estimate of likely arbitration costs, plaintiff nonetheless fails to demonstrate her own *inability* to pay for such costs because she merely establishes that she does not *currently have the resources* to pay for arbitration, and not that she is *incapable* of doing so. It is true, of course, that plaintiff has established, *inter alia*, that (i) she is currently unemployed and does not receive income; (ii) her husband's income is roughly $1,500–$2,000 per month after taxes; (iii) her monthly expenses—which include a $1,807.32 monthly mortgage payment and a $498.75 monthly condominium fee—total approximately $3325; (iv) she and her husband have minimal funds in their bank accounts and 401(k) plans, and they currently possess negligible, if any, equity in their condominium; (v) she and her husband are without medical insurance; (vi) she and her husband have one minor child, currently are expecting another, and provide economic support to her husband's family in the Republic of Georgia; and (vii) neither plaintiff, nor her husband, have sufficient property to serve as collateral to obtain a loan to advance arbitration costs. Thus, it appears at first blush, taking plaintiff's current financial situation in isolation, that she does not have disposable income with which to advance or pay arbitration expenses. Yet, proving a lack of disposable income, without further explanation, is not what plaintiff has the burden to show; rather, she must demonstrate a lack of "*ability*" to advance the arbitration costs.[9] *Bradford*, 238 F.3d at 556 (emphasis added). In this respect, she falls short.

---

[9] Predigo argues that the appropriate measure of plaintiff's financial condition should be her ability to pay for arbitration *at the time she filed this lawsuit*, and *not* at the time the Predigo seeks to compel arbitration. And it is true, as defendant points out, that the Fourth Circuit has previously referred to the relevant financial status as a plaintiff's status "at the time [the] action was brought." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). But it is also true that in *Adkins* the Fourth Circuit did not directly address any argument regarding the relevant point in time for evaluating a plaintiff's financial status. *Id.* Moreover, the Fourth Circuit has not

Indeed, as plaintiff has represented in her online resume, she was employed by two different companies—Phase One Consulting and General Dynamics—for most of the last three years since she concluded performance of the CA. This reflects a clear ability to obtain gainful employment.[10] Moreover, plaintiff also lists on that same resume her education at the University of Virginia McIntire School of Commerce, similarly evidencing her exemplary employment qualifications. Thus, plaintiff has *not* established that she is *unable* to earn sufficient income to advance arbitration costs; rather, she has merely established that she currently *does not* earn such income. Accordingly, absent proof as to the reasons underlying plaintiff's employment situation, she has failed to meet her burden of showing her inability to pay for arbitration here.[11]

Finally—and most importantly—even assuming that plaintiff were able to show the *likelihood* of $2,700–$9,000 in arbitration costs and her *inability* to advance those costs, plaintiff has failed to adduce *any* evidence of the baseline cost that she would incur in pursuing her claims against Predigo in litigation. Instead, plaintiff simply asserts, without evidentiary support, as follows:

---

explicitly done so in any other case. The distinction is not relevant to the analysis here, however, as plaintiff has failed to meet her burden regardless of which time provides the relevant standard.

[10] It is also worth noting that plaintiff's compensation pursuant to the CA was $49 per hour, and plaintiff's listing of the positions with Phase One Consulting and General Dynamics suggests that her positions with those companies likely provided similar compensation.

[11] Although plaintiff again cites *Camacho* in support of her argument here, that case is notably distinguishable in this respect. Importantly, in *Camacho*, the court had already found plaintiff's financial situation sufficient to permit her to proceed *in forma pauperis*. *Camacho*, 167 F. Supp. 2d at 892, 897. Plaintiff has not sought, and certainly has not been granted, such status here. Moreover, the plaintiff in *Camacho* earned a weekly income of approximately $300 as a waitress, was the sole source of support for herself and her three children, attended part-time community college classes, and lived rent-free in the home of another family. *Id.* at 894–95. Plaintiff here is hardly similarly situated. While her financial situation is far from optimal, she has not met her burden of showing an *inability* to remedy that situation. And insofar as *Camacho* is inconsistent with the result reached here, it is unpersuasive.

> [T]he temporary withdrawal of Predigo from court (that is, until the arbitrator renders an award) would not reduce the costs and expenses of this action to any appreciable degree for any of the parties, including, in all likelihood, Predigo. Rather, the proposed arbitration would add a second layer of expense and complication to these proceedings.

Pl.'s Second Supplemental Mem. in Opp'n, at 5. The above quote is the sum total of plaintiff's discussion of the baseline costs of litigation. Importantly, plaintiff does not proffer how she paid the $350 filing fee when she initiated this lawsuit, nor does she adduce any evidence estimating the costs she has already incurred—or will incur in the future—to pursue her claims against Predigo in court. And in the end, this failure to present *any* evidence estimating her cost of litigation delivers the fatal blow to plaintiff's opposition to arbitration here. Indeed, as the Fourth Circuit clearly held in *Bradford*, "the cost of arbitration, as far as its deterrent effect, *cannot* be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are 'too high.' " *Bradford*, 238 F.3d at 556 n. 5 (emphasis added). Instead, the inquiry "*must* focus upon a claimant's expected or actual arbitration costs and [her] ability to pay those costs, *measured against a baseline of the claimant's expected costs for litigation* and [her] ability to pay those costs." *Id.* (emphasis added). Establishment of a baseline is particularly important in light of the Fourth Circuit's repeated observations regarding the high cost of litigating the average employment dispute. *See, e.g., Hooters*, 173 F.3d at 936 ("By one estimate, litigating a typical employment dispute costs at least $50,000 and takes two and one-half years to resolve."), *quoted in Bradford*, 238 F.3d at 552 (same). Here, plaintiff has failed to provide *any* baseline for comparison; accordingly, she has failed to meet her burden pursuant to *Bradford*.

Importantly, insofar as plaintiff's lack of evidence may be interpreted as an argument that piecemeal resolution of her claims against Predigo in arbitration, and against the other defendants

in litigation, effectively duplicates her costs, such an argument is contrary to well-settled precedent holding that piecemeal resolution of a party's claims against multiple defendants in different forums, although potentially less efficient than simultaneous resolution, is nonetheless required by the FAA.[12] This is sensible, as a contrary rule would permit a party to a bargained-for arbitration clause to evade that clause's grasp simply by suing additional defendants who are not parties to the arbitration clause.

Moreover, even assuming that plaintiff has retained attorneys willing to advance costs and to represent her on a contingency basis in her litigation here—thus permitting her to proceed to this stage without advancing any out-of-pocket costs—she has failed to show that she could not secure a similar arrangement with these attorneys in pursuing arbitration. Additionally, insofar as plaintiff has the right, should she prevail in litigation, to recover attorneys' fees and costs, she does not forfeit this right by pursuing arbitration. *See, e.g., Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 n. 1 (4th Cir. 2002) (citing *Gilmer*, 500 U.S. at 27–28) (observing in a Fair Labor Standards Act case that a plaintiff pursuing a federal statutory claim does not forfeit substantive statutory rights, including the right to seek attorneys' fees and costs); *Mitsubishi*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits

---

[12] *See Moses H. Cone*, 460 U.S. at 20 ("Under the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."), *quoted in In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 285 (4th Cir. 2007) ("[T]he mere fact that the plaintiffs may not join the defendants in a single arbitration proceeding does not prevent the plaintiffs from effectively vindicating their statutory rights. While individual proceedings may be less efficient . . . , that inefficiency is a function of Congress's preference for resolution of disputes by arbitration and cannot be a basis for defeating the arbitration that Congress was seeking to encourage." (citing *Moses H. Cone*, 460 U.S. at 20; *Green Tree*, 531 U.S. at 90–91; *Adkins*, 393 F.3d at 503; *Bradford*, 238 F.3d at 558)).

to their resolution in an arbitral, rather than a judicial, forum).[13] The arbitration provision here recognizes this, as it provides that the parties need only pay separately for counsel fees and expenses "unless otherwise required by law." CA ¶ 6.14(c).[14] In the end, plaintiff has simply failed to meet her burden of proving that proceeding in arbitration, *as compared to proceeding in litigation*, would prevent her from effectively vindicating her Title VII rights. Accordingly, arbitration must be compelled here.

A final point must be addressed. Because arbitration of plaintiff's claims against Predigo must be compelled, plaintiff's claims against Predigo must be stayed pending that arbitration, and not dismissed as Predigo requests. *See* 9 U.S.C. § 3. Moreover, plaintiff's claims against Omnitech and Fannie Mae should also be stayed, notwithstanding that those claims are not subject to the arbitration clause in plaintiff's agreement with Predigo. This is so because where, as here, arbitration

---

[13] It is worth noting that the *possibility* of obtaining reimbursement of outlays towards arbitration costs is only relevant insofar as it limits the deterrent effect on a plaintiff's decision to *initiate* arbitration *ex ante*, and not insofar as it may recompense a plaintiff *ex post* who was nonetheless deterred from pursuing arbitration in the first place. *See Bradford*, 238 F.3d at 556 n. 5 (focus must be on the "deterrent effect" of arbitration costs).

[14] Predigo also points to the CA's fee-shifting provision, which provides for fee-shifting in favor of a prevailing party in "any action or proceeding to enforce th[e] [a]greement or any provision hereof, or for any damages by reason of alleged breach of th[e] [a]greement or any provision hereof, or for a declaration of rights hereunder." CA ¶ 6.07. It is unclear, however, whether this provision, because it specifically refers to enforcing the CA, breaching the CA, or a declaration of rights under the CA, is narrower than the arbitration clause, which operates here because it applies to claims "relating to or in connection with . . . performance" of the CA. *Id.* at ¶ 6.14(a). And although Predigo has offered to stipulate that the fee-shifting provision would apply should plaintiff prevail on her Title VII claim in arbitration, Predigo has conditioned that offer to stipulate on plaintiff's agreement that it would also bind her in arbitration. Because plaintiff has not agreed to stipulate as such, and because it is currently unclear whether the fee-shifting provision would apply in arbitration, the result reached here does not rest on the presence of the fee-shifting provision in the CA. In any event, because plaintiff retains her Title VII statutory rights to attorney's fees and costs should she prevail in arbitration, it is unnecessary to consider the fee-shifting provision here.

of claims against a party to an arbitration agreement is likely to resolve factual questions coextensive with claims against nonparties to that arbitration agreement, "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action." *Am. Home Assurance Co. v. Mercury Constr. Corp.*, 629 F.2d 961, 964 (4th Cir. 1980), *quoted in Am. Heart Disease Prevention Found. v. Hughey*, 106 F.3d 389, 1997 WL 42714, at *6 (4th Cir. Feb. 4, 1997) (Table) (unpublished) (remanding to district court to stay "all litigation," including claims against nonparties to an arbitration agreement, where "all of the claims [were] based on common factual allegations and arose as the result of acts purportedly taken to satisfy the . . . contractual obligations" between the parties to the arbitration agreement).[15]

Accordingly, an appropriate Order will issue compelling arbitration of plaintiff's claims against Predigo and staying this action, including plaintiff's claims against Omnitech and Fannie Mae, pending completion of the arbitration.

Alexandria, Virginia
January 6, 2009

T. S. Ellis, III
United States District Judge

---

[15] Indeed, such a stay, by permitting resolution of plaintiff's claims in an arbitral forum that may well be less expensive than litigation, may, in the end, prove to save plaintiff more money than it costs her. Of course, as discussed *supra*, plaintiff has not adduced any proof disputing or confirming this possibility.